Boeing, J.,
delivered the opinion of the court:
By the charter party the owners assumed the “ marine risks;” and these, for this class of cases, are of two kinds, viz, ordinary and extraordinary; and they are distinct enough to be the ¡subjects of express and distinctive stipulation, as they were in Leary’s Case, (14 Wall., p. 607.) In that case the United States assumed expressly “ the extraordinary marine risks,” and the ¡Supreme Court decided as follows: uThe term extraordinary is there used to distinguish an unusual risk, which the vessel ■might be compelled to run by the order of the Government, from those risks which would be covered by an ordinary marine policy, ¡and which might be expected to arise from the service an which the vessel was engaged.”
By this decision ordinary risks are one thing, and extraordinary risks are another; and the owner may, as in Leary’s Case ■contract as to ,the one or the other; and if he intends to confine his .contract to one or the other he must specify which, and if he does not.so intend to confine his contract, but to assume *261 both, he may undoubtedly do so, and that intent will be necessarily implied, if liis language includes both, by specifying both, or by using terms which in their proper signification include both. And that this charter-party does, for it used the words “ marine risks,” and these, in their proper signification, include all marine risks incident to the service, because they specify or except none. And for this reason the same words “ marinerisks,” in a charter-party for a freighting voyage in the merchant service, include all marine risks incident to that service.
And a contract is to be construed in reference to its own subject-matter and circumstances, and not in reference to the different subjects-matter and circumstances of other contracts. And this contract was made with the Government in time of war and to be performed in it; and by the arrangement between the parties the boat was to be employed in carrying military dispatches flagrante hello. This is a very different service from that of a freighting-vessel in a time of peace, on a contract between individuals 5 and therefore it is not obvious why the words in a contract for the one service should be ruled by their meaning in a contract for the other service and confined to its different circumstances. The parties here must have contemplated the particular service they contracted for and its probable and possible exigencies ; and it was certain that a military exigency might require extraordinary as well as ordinary risks to be incurred for the due performance of the service; and if in such case they used words which in their proper signification covered both, the legal implication would seem to be that they meant to include both.
But however this may be, the owners assumed “ the marine risks,” and the proximate cause of the injury was a marine risk, and a usual marine risk incident to navigation, for it was a sunken canal-boat floating in the river. And in the case of Morgan v. The United, States, (14 Wall., p. 531,) the Supreme Court, after stating that a marine risk was “ the proximate cause” of the loss, said: “We cannot proceed further, and consider whether the war did not create the exigency which com-X>elled the employment of the vessel.” And in that case the vessel was required by a military order to cross the bar a second time after she had struck once, and in a high wind and sea, and against the judgment of her master and of the pilot on board. *262 And it was held that, as the proximate cause of the loss was a marine risk, and the owners had assumed the marine risks, the defendants were not liable.
And we think the case last cited determines this case on all its points; the proximate cause of loss was a marine risk, incurred by a military command, and before suit the United States had paid for a part of the consequences of the injury sustained, as they did here,- and the decision of the Supreme Court decided that that did not make the United States liable in the suit.
And in Morgan’s case there was a pilot on board, as there was here.
In the facts found it is stated as follows: “ That the steamer was, on the occasion of the accident laid in the petition, in charge of a Government pilot, provided by the United States.” And it was so stated because such was the language of the witness. But we understand by it that the pilot was provided by the United States to act in his function of pilot, and not otherwise, and because this dispatch-boat was to be used on pilot-ground, and in a service requiring constant and instant readiness, and with no purpose whatever of taking the boat from the actual possession of its owners and their master; and if, because of the temporary absence of the master , and his first engineer, the pilot was in any other than his professional charge, it was as representing them, and not as taking possession of the vessel for the United States, for which he had no authority from the United States.
The Supreme Court held in Leary'’s Case that stipulations in a charter-party that the general owners should keep the vessel in good condition and receive goods at the request of the United States, and refuse to receive goods without their assent, &c., furnished conclusive evidence that the possession and control of the vessel had not passed to the Government, but had been retained by the owner. There are the like stipulations in the charter-party in this case, and we think their effect is in no way modified by the facts found.
Nott, J., was al suit when this case was decided.